IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, ) ) Plaintiff, ) v. ) ) CHORAK & SONS, INC., ASSURANCE ) COMPANY OF AMERICA, as subrogee of ) SRT CHICAGO, INC. And SRT CHICAGO, ) INC., ) ) Defendant. ) | Case No. 07 C 4454 Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Auto-Owners Insurance Company ("Auto-Owners") filed suit against Chorak & Sons, Inc. ("Chorak"), Assurance Company of America ("Assurance") and SRT Chicago, Inc. ("SRT") seeking a declaratory judgment that it is has no duty to defend or indemnify Chorak as to a complaint filed against Chorak in the Circuit Court of Cook County, Illinois. Auto-Owners stipulated to the dismissal of Chorak, and Chorak stipulated to be bound by any judgment. The remaining parties then brought cross-motions for Rule 12(c) judgment on the pleadings. Auto-Owners argues that the underlying complaint falls within exclusions of the coverage of the policy, and Defendants argue that the complaint falls squarely within the coverage of the policy and the exclusions do not apply. For the reasons stated below, this Court grants Auto-Owners' Motion for Judgment on the Pleadings and denies Defendants' Motion for Judgment on the Pleadings.

1

**STATEMENT OF FACTS**

Assurance and SRT filed the action underlying this Complaint for a Declaratory Judgment on April 4, 2007 in the Circuit Court of Cook County seeking damages for breach of contract and defective workmanship and negligence. Cmplt. at ¶¶ 12, 15. In the complaint, Assurance alleges that SRT, the general contractor for redevelopment of a home, hired Chorak as a subcontractor to demolish the interior and strengthen the frame construction of the home. *Id*. at 12. Chorak, as part of its duties under the contract, attempted to replace the home's "sill plate," a two inch by six inch wooden plate at the top of the foundation. *Id*. at ¶ 13. To do this, Chorak was required to lift the home one to one-and-one-half inches off of its foundation. *Id*. at 13-14. As such, Chorak placed floor jacks throughout the basement for use in raising the house. *Id*. at 13. However, when Chorak was raising the house, it slid off its foundation, resulting in catastrophic damage to the home's structure. *Id*. at 14. As a result, the City of Chicago ordered demolition of the home. *Id*.

The underlying complaint alleges two counts: Breach of Contract and Defective Workmanship and Negligence. *Id*. at 15. Specifically, Assurance alleges that Chorak performed its contracted work incorrectly in the following respects: 1) Chorak improperly raised the home from its foundation; 2) Chorak failed to adequately brace the home while attempting to raise it from its foundation; 3) Chorak failed to formulate a plan for adequately bracing the home before attempting to raise it from its foundation; and 4) Chorak was otherwise negligent. Assurance Cmplt. at ¶ 15.

Chorak held a General Commercial Liability ("CGL") policy issued by Auto-Owners that was effective when the events in the underlying complaint occurred. Cmplt. at ¶ 10. Under the policy, Auto-Owners covered damages and assumed a right and duty to defend Chorak regarding "bodily injury" and "property damage" caused by an "occurrence" that took place in the "coverage

territory." *Id*. at ¶ 11.[1] However, the policy included two so-called "business risk exclusions." Under exclusions j(5) and j(6), Chorak's CGL policy did not cover "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or "that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it" is not covered by the CGL policy. *Id*. "Your work" was defined as "work or operation performed by you or on your behalf; and materials, parts or equipment furnished in connection with such work or operations." *Id*.

## **STANDARD**

A party may move for Rule 12(c) judgment on the pleadings after the filing of a complaint and answer. *Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 747 (7th Cir. 2008). In considering such a motion, the Court views the facts in the light most favorable to the non-moving party. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). Such a motion should be granted only when it appears beyond a doubt that the nonmoving party cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved. *Id*. citing *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).

The construction of the provisions of an insurance policy is a question of law that the Court may resolve summarily. *Roman Catholic Diocese of Springfield v. Maryland Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998); *Traveler's Ins. Co. v. Eljer Manf., Inc.*, 757 N.E.2d 481, 491 (Ill. 2001).

---

[1] The terms "property damage" and "occurrence" are defined in the policy and carry their own legal significance. As this Court decides this matter on the application of the policy exclusions also contained in the contract, it does not go into a detailed discussion of the definitions of these terms or their legal significance.

3

The Court takes into account the type of insurance purchased, the nature of the risks involved, and the purpose of the contract. *Traveler's*, 757 N.E.2d at 491. To determine whether an insurance company has a duty to defend an insured, the Court compares the allegations in the underlying complaint to the relevant provisions of the insurance policy. *Roman Catholic Diocese*, 139 F.3d at 565; *Pekin Ins. Co. v. Willett*, 704 N.E.2d 923, 925 (Ill.App.Ct. 1998). The insurer has a duty to defend if the facts in the underlying complaint fall or potentially fall within the language of the policy. *Id*.

## **DISCUSSION**

Auto-Owners argues that the damage to the house constitutes damage to the particular part of property on which Chorak performed defective work and thus falls under exceptions j(5) and j(6) to the policy. Defendants, conversely, argue that the damage to the house is "property damage" caused by an "occurrence" and does not fall within and exception because the "particular part" of the property Chorak was performing work on was the sill plate, and thus only damage to the sill plate should fall within the exclusions.

Even if the home sliding off of its foundation constitutes "property damage" resulting from an "occurrence," Auto-Owners is not obligated to defend or indemnify Defendants for the resulting damage because any such damage fell under exclusions j(5) and j(6) to the policy. Exception j(5) excluded damage to the "particular part" of property on which Chorak was "directly or indirectly" performing operations if the damage arose from those operations, and exclusion j(6) excluded damage to the "particular part" of property that must be restored because Chorak's work was incorrectly performed on it.

4

This case is controlled by the Illinois Court of Appeals's decision in *Pekin Ins. Co. v. Willett*, in which the court considered identical exclusions under analogous circumstances. 704 N.E.2d at 926. Willett was contracted to empty a swimming pool, paint it, and fill it with water and the requisite chemicals so that it was ready for use. *Id.* at 924. However, after Willett painted, and before it filled the pool, a heavy rainstorm caused the pool to push out of the ground, damaging it. *Id.* The court found that exclusions j(5) and j(6) excluded the resultant damage to the pool from coverage by Willett's CGL policy and rejected arguments analogous to those made by the Defendants here. *Id.* at 926. Specifically, the court rejected the argument that the exclusions did not apply, holding instead that Willett did not provide the pool at issue because the exclusions disallowed coverage not only for damage to the insured work product but also for damage caused to property on which the insured was "performing operations." Also, most notably, the court held that the exclusions [did] not exclude coverage for damage done only to the precise portion of the property on which Willett was technically hired to work. Rather, the exclusions applied to "property damage caused by poor workmanship." *Id.* at 926. As such, the structure that Willett worked on was the pool itself, not just the surface he painted, and thus the damage was not covered by the CGL policy. *Id.* at 927. Indeed, Willett's work in emptying, painting, and refilling the pool, necessitated the involvement of the entire pool in its operations.

Similarly, the structure on which Chorak was working was the entire house. Chorak was tasked with replacing the sill plate. Cmplt. at ¶ 13. This required work on the entire house; that is, Chorak had to raise the entire house in order to complete the assigned task. *Id.* Much like how Willett, who emptied the pool, could not claim that his work was limited to the surface of the pool he painted, Chorak, who raised the entire house, cannot now argue that it was responsible only for

5

the sill plate. Chorak's work was allegedly incorrectly performed, and that incorrect performance caused damage to the house. Thus, the damage to the house caused by the operations is excluded from coverage under the Auto-Owner's policy. *See also Century Sur. Co. v. Demolition & Dev. Ltd.*, No. 04 C 7188, 2006 WL 163174, at *2 (N.D.Ill. January 18, 2006) (identical exclusions in a CGL policy excluded coverage when contractor, who was hired to demolish a house, demolished the wrong house).

Defendants argue that *U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.* dictates that the damage to the house did not fall under either of the exclusions. In *Wilkin*, the defendant contractor installed insulation that contained asbestos, and the underlying lawsuits concerned damage to buildings and their contents that had been contaminated with asbestos fibers. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 929, 931 (Ill. 1991). Wilkin's CGL policy contained business risk exclusions somewhat similar, although not identical, to those in *Willett* and here. Specifically, they excluded coverage for "property damage to the insured's products arising out of such products or any part of such products" and "property damage to work performed by or on behalf of the insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith." *Id.* at 934. The plaintiffs argued that the exclusions applied because the complaints sought coverage of the removal, repair, or replacement of the asbestos products installed by Wilkin. *Id.* The court disagreed, holding instead that the damages were as a result of the contamination of buildings and their contents caused by the asbestos product and thus, the complaints sought recovery for damage to property other than that installed by Wilkin or caused by Wilkin's workmanship, and the exclusions did not apply. *Id.*

6

Chorak argues that the damage to the home in this case similarly falls outside of the exclusions because Chorak did not install the injured property. However, *Wilkin* has been limited to its specific facts and is not directly applicable to standard construction cases. *See*, *e.g. Traveler's*, 757 N.E.2d at 498-99 ("our decision in *Wilkin* recognized the unique nature of asbestos products, which disseminate toxic fibers upon installation and continuously contaminate a structure and its contents subsequent to installation"); *Viking Construction Co. v. Liberty Mutual Ins. Co.*, 831 N.E.2d 1, 15 (Ill.App.Ct. 2006) (*Wilkin* has been limited to the unique situation of incorporating asbestos into a larger structure and does not control cases dealing with construction services); *Diamond State Ins. Co. v. Chester-Jensen Co., Inc.*, 611 N.E.2d 1083, 1092 (Ill.App.Ct. 1993) (damage in *Wilkin* was not the result of product or performance failure but rather the result of the coincidental problem of diffusion of harmful asbestos fibers). Indeed, the scenario in *Wilkin* is differentiable from construction cases in which the contractor either installed a faulty product or caused damage to a structure while completing its work. In *Wilkin*, the contractors did not actually damage the building in performing their work. That is, they successfully installed insulation that presumably worked. However, in a truly unique situation, the working installation that they installed caused the diffusion of the dangerous fibers into the building.

Excluding the damage to the house under exclusions j(5) and j(6) also effectuates the cited purpose of CGL policies. Such policies "are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products." *Traveler's*, 757 N.E.2d at 503; *State Farm Fire and Cas. Co. v. Tillerson*, 777 N.E.2d 986, 993 (Ill.App.Ct. 2002) ("these exclusions are premised on the theory that liability policies are not intended to provide protection

7

against the insured's own faulty workmanship or product, which are normal risks associated with the conduct of the insured's business"). Here, Chorak requests coverage for its defective work. Put another way, it asks for Auto-Owners to cover damage as a result of the normal risks associated with lifting a home. Chorak does not request coverage for damage to any other property. Therefore, for the reasons stated above, Auto-Owners' Motion for Judgment on the Pleadings is granted, and Chorak's Motion for Judgment on the Pleadings is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:　　　August 8, 2008